UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AL COPELAND INVESTMENTS, INC.,<br>ET AL | CIVIL ACTION |
| VERSUS | NO. 06-4631 |
| LEXINGTON INSURANCE COMPANY,<br>INDIAN HARBOR INSURANCE COMPANY,<br>AND WESTCHESTER SURPLUS LINES<br>INSURANCE COMPANY | SECTION "C" |

## ORDER AND REASONS

Before this Court is a Motion for Preliminary Injunction and to Enforce Settlement Agreement[1] by Al Copeland Investments, Inc. et al. (Plaintiffs) against Lexington Insurance Company (Defendant Lexington), Indian Harbor Insurance Company (Defendant Indian Harbor), and Westchester Surplus Lines Insurance Company (Defendant Westchester).  Plaintiffs seek to enjoin Defendant Lexington and Defendant Westchester from violating the Louisiana Department of Insurance Emergency Rules which prohibited insurance companies from canceling or altering existing insurance coverage in effect August 26, 2005. In the alternative, Plaintiffs seek to require Defendant Lexington to abide by the terms of its "settlement agreement" confected to

---

[1] Fed. Rec. Doc. 26.

avoid a preliminary injunction hearing previously requested in September, 2006.[2] Defendant Lexington[3] and Defendant Westchester[4] oppose the motions. This matter was submitted on briefs and without oral argument.

Upon a thorough review of counsels' memoranda and applicable law, the Court has determined that granting Plaintiffs' motions would be inappropriate. For the reasons set forth below, Plaintiffs' Motion for Preliminary Injunction is **DENIED**. In addition, the Plaintiffs' Motion to Enforce Settlement Agreement is **DENIED**.

I.     **Background and Procedural History**

Plaintiffs had insurance policies with Defendant Lexington, Defendant Indian Harbor and Defendant Westchester with terms from August 19, 2005 to August 19, 2006. All combined, this insurance had a premium of $481,286.46 for $122,306,871 of coverage. Twenty-seven properties were damaged in Hurricanes Katrina or Rita. Plaintiffs have worked diligently to repair the damage.[5]  However, Plaintiffs alleged that substantial completion of the repair and reconstruction had been hindered by Westchester's failure to pay for the damages.

---

[2] Fed. Rec. Doc. 6, Motion and application for preliminary injunction; and Fed. Rec. Doc. 9, Order, motion for expedited hearing dismissed as moot, when Defendant Lexington and Defendant Westchester agreed to issue renewals. See also Fed. Rec. Doc. 10, Motion and application for preliminary injunction; and Fed. Rec. Doc. 13, Order, motion for expedited hearing dismissed as moot, when Defendant Indian Harbor agreed to issue a renewal. Defendant Indian Harbor was subsequently dismissed as a party on January 12, 2007; see Fed. Rec. Doc. 22, Motion to dismiss party and Doc. 23, Order granting motion to dismiss.
[3] Fed. Rec. Doc. 31.
[4] Fed. Rec. Doc. 35.
[5] Fed. Rec. Doc 15. At the renewal period in August 2006, 19 of the insured properties had been repaired; another 6 were nearly complete; and one property was not to be repaired.

As a result of Hurricane Katrina, the Commissioner of Insurance adopted Emergency Rule 23 on April 28, 2006.[6]  This law prohibited insurance companies from canceling or refusing to renew property insurance covering structures located in Louisiana that sustained damage during Hurricanes Katrina and/or Rita until the earlier of 60 days after the substantial completion of the repair and/or reconstruction of the property or until December 31, 2006.[7]  It also required insurers to renew policies with the same premiums, rate structure, terms and conditions that they had before Hurricane Katrina, subject only to changes in the premium structure based on objective criteria.[8]

Plaintiffs alleged that Defendants violated Emergency Rule 23 by refusing to renew their insurance policies under the same coverage limits and premiums for the period.  After Plaintiffs filed a Verified Petition and Application for Temporary Restraining Order (TRO), Preliminary and Permanent Injunction in Civil District Court for the Parish of Orleans, State of Louisiana, Judge Reese granted the TRO.  Defendants then removed to this Court.[9]  During September, 2006, Plaintiffs reached an amicable solution with all Defendants. Defendant Indian Harbor was later dismissed from the suit. Defendant Lexington renewed its policy for the period from August 19, 2006 until

---

[6] See Emergency Rules: Title 37. INSURANCE. Part XI. Rules. Chapter 43. Rule 23—Suspension of Right to Cancel or Nonrenew Residential, Commercial Residential or Commercial Property Insurance Due to Hurricane Katrina or Hurricane Rita, (LAC 37:XI.Chapter 43), § 4301-4329.
[7] §4329. Termination Date
A. Emergency Rule 23 shall terminate on the earlier of either:
1. sixty days after the substantial completion the repair or reconstruction of the dwelling, residential property or commercial property covered by a policy of insurance that is the subject of Emergency Rule 23; or
2. December 31, 2006.
AUTHORITY NOTE: Promulgated in accordance with Executive Order No. KBB 05-70; R.S. 29:724; R.S. 29:766: R.S. 22:2; R.S. 22:3; R.S. 22:1214.(7), (12) and (14); R.S. 49:950 et seq.
[8] "Admitted insurers and surplus lines insurers are hereby advised that they are expected to renew any applicable Louisiana policyholder at the previous premium/rate and with the same terms and conditions as previously written, subject only to a change to the premium/rate structure that is based on objective criteria." Advisory Letter Number 06-03, May 31, 2006, James J. Donelan, Commissioner of Insurance.
[9] Fed. Rec. Doc. 1.

August 18, 2007, under protest, reserving all rights, and reserving all rights to sue for what it alleged was a legal increased premium. Defendant Westchester extended its policy to cover the period mandated by the extension of Emergency Rule 23, with an additional extension to expire on March 31, 2007. On January 2, 2007, Defendant Westchester mailed a Notice of Nonrenewal of Insurance, informing Plaintiffs that the policy which expired on March 31, 2007 would not be renewed because "the above referenced insurance company may be unable to offer renewal coverage with the same terms, conditions and premium rate as the expiring insurance policy."[10] On January 31, 2007, Defendant Lexington mailed a Notice of Cancellation, informing Plaintiffs that the policy would be canceled effective March 5, 2007, and that the pro-rated premium the Plaintiffs had paid, in the amount of $131, 684.00, was being refunded. Defendant Lexington expressly reserved its right "to defend the litigation and to prosecute the counterclaim."[11] Plaintiffs then filed the instant motion for preliminary injunction and to enforce the settlement agreement.

## II.    Legal Standard

Whether to grant or deny a preliminary injunction rests in the discretion of the trial court.[12] A preliminary injunction is an extraordinary and drastic remedy.[13] The applicant has the burden of persuasion.[14] An applicant for a preliminary injunction must show: "(1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his

---

[10] Fed. Rec. Doc. 34, Exhibit C.
[11] Fed. Rec. Doc. 31, Exhibit I.
[12] *Deckert v. Independence Shares Corp.*, 331 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940).
[13] *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed. 166 (1974).
[14] *Café 207, Inc. v. St. Johns County*, 989F.2d 1136 (1993).

threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest."[15] The applicant must carry "the burden of persuasion on all four requirements."[16] If the applicant "does not succeed in carrying burden on any one of the four prerequisites, preliminary injunction may not issue and, if issued, will be vacated upon appeal."[17]

**III.   Analysis**

**(1) Plaintiffs move to enjoin Defendant Lexington and Defendant Westchester from violating the Louisiana Department of Insurance Emergency Rule 23.**

The plaintiffs argue that "Emergency Rule 23 requires the defendant insurers to renew the insurance policies with the same terms and conditions including maintaining the 12 month policy period."[18] Plaintiffs argue they are entitled to an injunction because they will suffer irreparable harm if Defendant Lexington is allowed to follow through with its intended cancellation of the insurance policy, effective March 5, 2007, and Defendant Westchester is allowed to nonrenew its policy scheduled to expire March 31, 2007.

Emergency Rule 23, which suspended the right of insurance companies to cancel or nonrenew residential, commercial residential or commercial property insurance due to Hurricanes Katrina or Rita, was extended on August 25, 2006.[19]

---

[15] *Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192, 196. C.A.5 (La.) 2003.
[16] *Id.*
[17] *Enterprise Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472, C.A.5 (Tex.) 1985.
[18] Fed. Rec. Doc. 26-3.
[19] Second Extension of Emergency Rule 23, Louisiana Register, Vol. 32, No. 09, September 20, 2006..

The relevant portions of the Emergency Rule 23 read:

**§ 4305 Cancellation or Nonrenewal Suspended**
A. The right of any insurer, surplus lines insurer or any other entity regulated by the commissioner to cancel or nonrenew any personal residential, commercial residential or commercial property insurance policy covering a dwelling, residential property or commercial property located in Louisiana that sustained damage as a result of Hurricane Katrina or its aftermath, or Hurricane Rita or its aftermath, is suspended and shall be prohibited until 60 days after the substantial completion or the repair and/or reconstruction or the dwelling, residential property or commercial property, except for the specific exceptions set forth in § 4307, or until Emergency Rule 23 is terminated by the Commissioner…

**§ 4329. Termination Date**
A. Emergency Rule 23 shall terminate on the earlier of either:
1. sixty days after the substantial completion the repair or reconstruction of the dwelling, residential property or commercial property covered by a policy of insurance that is the subject of Emergency Rule 23; or
2. December 31, 2006.[20]

In response to questions on how to implement Emergency Rule 23, the Insurance Commissioner issued an Advisory Letter on May 31, 2006.[21] Pertinent portions read:

> Admitted insurers and surplus lines insurers are hereby advised that they are expected to renew any applicable Louisiana policyholder at the previous premium/rate and with the same terms and conditions as previously written, subject only to a change to the premium/rate structure that is based on objective criteria…
> Additionally, I want to reiterate that admitted insurers and surplus lines insurers are only required to comply with Emergency Rule 23 until 60 days following substantial completion of the repairs to the damaged property or December 31, 2006, whichever occurs first.[22]

Later, in response to questions on how properly to cancel or nonrenew insurance policies that had been protected by Emergency Rule 23, the Insurance Commissioner issued an Advisory Letter on October 27, 2006.[23] It read, in pertinent part:

---

[20] *Id*.
[21] Advisory Letter Number 06-03, May 31, 2006, James J. Donelan, Commissioner of Insurance.
[22] *Id*.
[23] Advisory Letter Number 06-05, October 27, 2006, James J. Donelan, Commissioner of Insurance

> 1. Admitted insurers and surplus lines insurers shall comply with all applicable statutory notice requirements set forth in the Louisiana Insurance Code, including, but not limited to, La. R.S. 22:635.3-636.6. Since Emergency Rule 23 does not terminate until midnight on December 31, 2006, all such statutory notices shall not be issued until on or after January 1, 2007. Any notice of cancellation or nonrenewal affecting a policy of insurance protected by Emergency Rule 23 dated prior to January 1, 2007 shall be null and void and shall have no force or effect.[24]

Here Plaintiffs allege they are entitled to a preliminary injunction. Plaintiffs allege: (1) a substantial likelihood that they will prevail on the merits because Defendants are in violation of Emergency Rule 23; (2) a substantial threat of irreparable injury, since they will not have adequate insurance and there is no adequate remedy at law; (3) the potential injury to Plaintiffs outweighs the threatened harm to the Defendants, since granting the injunction would merely return the parties to the status quo; and (4) the public interest would be served by enforcing Emergency Rule 23 and upholding its purpose of protecting consumers.

Defendant Lexington argues that Plaintiffs cannot meet the burden of qualifying for a preliminary injunction. Defendant Lexington alleges: (1) no substantial likelihood that Plaintiffs will prevail on the merits, as Emergency Rule 23 expired on December 31, 2006; (2) no substantial threat that Plaintiff will suffer irreparable injury, since Plaintiffs have had ample opportunity to explore alternative insurance; (3) Defendant Lexington's threatened injury outweighs the threatened harm to the Plaintiffs if their insurance policy is required to cover the 2007 hurricane season; and (4) the public interest will not be served by undercutting the essential principles that contracts constitute binding and enforceable law between the contracting parties.

---

[24] *Id.*

Defendant Westchester argues that Plaintiffs cannot meet the burden of qualifying for a preliminary injunction. Defendant Westchester alleges: (1) no substantial likelihood that that Plaintiffs will prevail on the merits, since Westchester more than complied with Emergency Rule 23, which expired on December 31, 2006; (2) no substantial threat that Plaintiffs will suffer irreparable injury, since they offer no evidence they are unable to procure insurance from other sources or of any alleged injury that cannot be compensated by money damages; (3) Defendant Westchester's threatened injury outweighs the threatened harm to Plaintiffs, because Plaintiffs seek to go far beyond Emergency Rule 23 with no proof of a weightier burden; and (4) the public interest would not be served by distorting the purpose and verbiage of Emergency Rule 23, which was enacted to provide temporary relief.

The Court finds that Plaintiffs have failed to carry their burden of persuasion on all four requirements for the extraordinary remedy of a preliminary injunction, as required by law. Both Defendants renewed their policies in compliance with Emergency Rule 23, albeit under protest.[25] Defendant Lexington issued a one-year renewal, to expire on August 18, 2007. Defendant Westchester issued an extension of the policy to expire on March 31, 2007. Both Defendants complied with the procedure for canceling or non-renewing their policies by giving the requisite written notice. Both Defendants complied with the Advisory Letter stating that no cancellations or nonrenewal notices could be mailed before the expiration of Emergency Rule 23 on December 31, 2006, and that the period during which Emergency Rule 23 was in force could not be counted toward the 30-day notice required. Defendant Lexington exercised its option to cancel the policy

---

[25] Fed. Rec. Doc. 15, Defendant Lexington's Answer and Counterclaim for additional premium.

upon 30 days written notice and a refund of the remaining premium, an express provision in its current and previous insurance contracts with Plaintiffs. Defendant Westchester issued a notice of non renewal on January 2, 2007.

Plaintiffs have failed to establish that a preliminary injunction is an appropriate remedy. Accordingly, Plaintiffs' Motion for a Preliminary Injunction is DENIED.

**(2) Plaintiffs move to require Defendant Lexington to abide by the terms of its "settlement agreement" confected to avoid the preliminary injunction hearing requested in September, 2006.**

In the alternative, Plaintiffs argue that Defendant Lexington's renewal of its insurance contract, to run from August 19, 2006 until August 18, 2007, was a contract that amounted to a settlement to avoid a hearing on the preliminary injunction motion filed by Plaintiffs. Plaintiffs argue that Defendant Lexington issued its policy renewal subsequent to the TRO granted by the Orleans Parish Civil District Court, before the matter was removed, and that it was extending coverage on the same terms, conditions and premium subject to Copeland's payment of at least the expiring premium rate no later than September 19, 2006. While Defendant Lexington is litigating its alleged right to increase the premium, it issued a Binder of Insurance for a commercial property policy effective August 19, 2006 to August 19, 2007. Plaintiffs argue that, although Defendant Lexington reserved the right to litigate the additional premium amount, it did not reference or reserve any right to cancel the policy prior to August 19, 2007 and should be estopped from doing so now. Further, Plaintiffs allege that the issuance of the insurance policy constituted a settlement, entered into after Plaintiffs obtained the TRO.

Defendant Lexington argues that the renewal insurance policy it issued contained an express 30-day cancellation provision which constitutes the law between the parties, and which language is clear and unambiguous. Defendant Lexington argues that the insurance coverage was extended on the "same terms, conditions and premiums,"[26] and "without prejudice to any position, argument, or counterclaim in the Litigation."[27] The previous insurance policy also contained a 30-day cancellation clause, and so constitutes one of the same terms and conditions. Defendant Lexington exercised its cancellation option, and complied with the express language of the contract, which required 30 days written notice followed by a refund of any remaining premium. Further, Defendant Lexington argues that the policy it issued did not constitute a settlement between the parties, but instead it constituted compliance with the TRO.

The following excerpt from the Katrina Canal Breaches decision by Judge Duval on November 27, 2006[28] sums up current Louisiana Law on contract interpretation:

> An insurance policy is a conventional obligation that constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship… The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.
> In *Cadwallader,* the Supreme Court of the State of Louisiana set forth succinctly the most important guiding principles: Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity

---

[26] Fed. Rec. Doc. 31, Exhibit B.
[27] *Id*.
[28] 2006 WL 3421012 (E.D.La.), *In re Katrina Canal Breaches Consolidated Litigation 2006,* internal citations and footnotes omitted.

where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent.

If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. The determination of whether a contract is clear or ambiguous is a question of law.[29]

The cancellation wording in the policy issued to Plaintiffs by Defendant Lexington follows:

**CANCELLATION CLAUSE**

CANCELLATION: This policy may be cancelled by the Insured by surrender thereof to the Company or by mailing to the Company a written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured, at the mailing address shown in this policy or last known address, written notice, stating when, not less than 30 days thereafter (10 days for non-payment of premium) such cancellation shall be effective. The effectiveness of the cancellation is not dependant on the return of unearned premium with notice. Proof of mailing of notice shall become the end of the policy period. Delivery of such written notice either by the Insured or the Company shall be equivalent to mailing. If the Insured cancels, earned premiums shall be computed in accordance with the customary sort rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment shall be made as soon as practicable after cancellation becomes effective.[30]

The cancellation clause contained in both policies issued to Plaintiffs by Defendant Lexington is clear and unambiguous. Therefore it must be enforced as written. This Court lacks the authority to change the terms of a contract, which constitutes the law between the contracting parties, because the cancellation provision is couched in unambiguous terms. Accordingly, Plaintiffs' Motion to Enforce Settlement is DENIED.

---

[29] *Id*.
[30] Fed. Rec. Doc. 31, Exhibit G.

## IV.     Conclusion

Having considered the complaint memoranda and applicable law, it is determined that Plaintiffs have failed to demonstrate that their motions present grounds for the relief requested. Accordingly, **IT IS ORDERED** that the Motion for Preliminary Injunction and to Enforce Settlement Agreement is **DENIED**.

New Orleans, Louisiana this 1st day of March, 2007.

_____
HELEN G. BERRIGAN
U.S DISTRICT JUDGE